UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SYLVIA SANTOS,                      :

              Plaintiff,            :

     -against-                      :

GENERAL ELECTRIC COMPANY,           :

              Defendant.            :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/11

REPORT & RECOMMENDATION

10 Civ. 6948 (JSR)(MHD)

TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:


     On August 26, 2010, pro se plaintiff Sylvia Santos filed this
action against her former employer, General Electric Company
("GE"), seeking, inter alia, the review and vacatur of two
decisions issued by an arbitrator under the auspices of the
American Arbitration Association ("AAA"). Those decisions had the
collective effect of dismissing all of plaintiff's fourteen
arbitral claims against GE. Ms. Santos also appears to assert some
additional, independent legal claims against GE, although they all
seem to derive from events that allegedly occurred during the
arbitral process or that were the subject of the arbitration.


     On December 30, 2010, GE moved for an order (1) dismissing Ms.
Santos's complaint in its entirety, (2) confirming the May 26, 2010
arbitration award, and (3) enjoining Ms. Santos from engaging in

1

further legal action against GE without prior court permission. For the reasons set forth below, we recommend that GE's motions be granted in part, by dismissing the complaint and confirming the arbitrator's award. We further recommend denial of the defendant's injunction request.

## PROCEDURAL HISTORY

Ms. Santos is a former employee of GE. (Decl. of Catherine Rogers, Esq. Ex. B at 1-2).[1] At the time when she began work for GE, she agreed, as a condition of employment, to submit employment-related disputes to GE's so-called RESOLVE Program, which encompassed mandatory mediation and arbitration, in lieu of litigation. (Id. at 5-7). In the wake of an alleged accident and because of continuing medical repercussions that plaintiff claims to have suffered, she went on disability leave on November 12, 2003. (Id. at 2-3). She apparently never returned to work and subsequently filed claims against GE in a number of venues.

On the administrative front, in early 2004 Ms. Santos filed a complaint against GE with the Equal Employment Opportunities

---

[1] References to defendant's exhibits annexed to Ms. Rogers' declaration will use the designation "(DX ___)".

Commission ("EEOC"), asserting claims of discrimination under Title VII and the Americans With Disabilities Act. (DX C). The EEOC dismissed that complaint in June of 2004. (DX E).

Later in 2004, Ms. Santos filed a pro se suit against GE in the United States District Court for the District of Connecticut, asserting claims of race and disability discrimination. In a ruling dated October 11, 2005, the District Court (Droney, J.) dismissed that lawsuit, directing the parties to pursue contractually required alternative dispute resolution under the RESOLVE Program.[2] Santos v. GE Capital, 397 F. Supp.2d 350, 353-56 (D. Conn. 2005) (annexed as DX B at 5-9). Ms. Santos appealed the District Court ruling to the Second Circuit, which sua sponte dismissed the appeal on May 3, 2006 for "lack[ of] an arguable basis in law or fact". (DX F). Approximately eighteen months later, on or about November 13, 2007, Ms. Santos moved in the District Court to reopen her case. (DX J). In a separate motion, dated February 28, 2008, Ms. Santos sought an order from the same court "to Recuse Judge and Order a New Trial and Change of Venue." (DX M). Judge Droney denied both motions by order filed June 3, 2008. (See DX O).

_____

[2] The provisions of RESOLVE, as reflected in GE's employee handbook, are found as an exhibit to plaintiff's motion papers. (See PX B3).

3

Parallel to Ms. Santos's efforts to upend the decisions of the Connecticut District Court and the Second Circuit, she and GE engaged in the alternative dispute resolution procedures mandated by the RESOLVE Program and the District Court's decision. The first step involved AAA mediation, which was conducted during the period from August 7 to October 10, 2007 (DXs H, I), but which did not yield a settlement. The parties then proceeded to AAA arbitration. (DX K). Although the plaintiff's initial arbitration papers left the nature of her claims somewhat vague, in a subsequent submission she identified fourteen claims, listed as follows:

1. Waiver of Rights
2. Fraud
3. Breach of agreement/contract
4. Discrimination [under] the Americans With Disabilities Act
5. Discrimination [on the basis of] race
6. Violation of Constitutional due process
7. Infliction of emotional distress
8. In[ter]ference with contractual rights
9. Creating a hostile work environment
10. Breach of fiduciary duties
11. Retaliation
12. Unfair and deceptive employment practices
13. Corporate Corruption
14. Misrepresentation

(DX A at attachment -- Arbitrator's Order dated Jan. 27, 2009 at 2). Of plaintiff's fourteen claims, the arbitrator dismissed ten for legal insufficiency by order dated January 27, 2009. (Id. at 8-12). The four claims that survived GE's motion to dismiss -- all of

4

which appear to have been federal-law claims -- were for disability discrimination, race discrimination, hostile work environment, and retaliation. (Id. at 9).

Following the January 27, 2009 dismissal order, the arbitrator sought to set up a pre-hearing schedule, though she encountered repeated resistance from Ms. Santos. Nonetheless she did finally impose a schedule for pre-hearing disclosures, though she was required to extend it repeatedly, principally as a result of failures by plaintiff to comply. (See DXs Q, S, U). Eventually, faced with continuing failures by Ms. Santos to meet her disclosure obligations or even to participate in the process, on May 26, 2010 the arbitrator dismissed the balance of Ms. Santos's claims on the basis of her violation of disclosure orders, her failure to meet ordered deadlines, and her failure towards the end of the process to participate in any way. (DX V -- May 26, 2010 Arbitral Award).

On August 26, 2010 Ms. Santos submitted a complaint to the Pro Se Clerk of this Court. The complaint was filed with the Clerk of the Court on September 14, 2010, and a package of service materials was sent to Ms. Santos on September 21, 2010. Ms. Santos, however, did not provide the summons and complaint to the United States Marshal for service until about November 12, 2010. (See USM-285).

The complaint was finally served by the United States Marshal's Office on GE by mail on or about November 16, 2010 and received by GE on or about November 22, 2010. (Def.'s Mem. of Law 4).[3]

In plaintiff's complaint, she seeks review and vacatur of the May 26, 2010 award and similar relief with regard to the arbitrator's January 27, 2009 order of partial dismissal.[4] Although her pro se pleading is less than precise, she appears to seek vacatur based on contentions -- more fully detailed in subsequent papers -- that the arbitrator was biased, that she was denied a fair hearing on her claims, and that the arbitrator's decisions so flouted legal standards as to justify re-examination by this court.

In Ms. Santos's pleading, she also proffers a narrative of events that she apparently views as containing unspecified separate civil claims for which she seeks damages. (Compl. ¶ V (seeking "statutory damage[s] for causes of action described throughout complaint"). See id. "Statement of fact"). Reading her pro se pleading liberally, we infer that she is asserting three claims for

---

[3] The Marshal's return reflects service on December 15, 2010. The record does not explain whether the complaint was served both by mail (in November) and by hand (in December).

[4] The complaint refers to an order dated January 27, 2010 (Compl. ¶ V), but we infer that this is a typographical error.

6

which she asks damages -- intentional infliction of emotional
distress (id. "Statement of fact", ¶ 13), allegedly improper
attempts by GE to deprive her of her disability benefits (in
possible violation of Employee Retirement and Income Security Act
("ERISA")) (id. ¶¶ 17-18), and violation of the Americans With
Disabilities Act ("ADA") (id. ¶ 19).


Defendant's Motion


GE seeks dismissal of plaintiff's complaint on the basis that
it is time-barred. Focusing solely on the plaintiff's application
for vacatur of the arbitral award, GE invokes the three-month
notice deadline specified in the Federal Arbitration Act ("FAA"),
9 U.S.C. § 12, and it observes that Ms. Santos did not serve her
complaint until nearly six months after delivery to her of the
arbitral award that she seeks to vacate.  As an alternative time-
bar theory, GE cites CPLR § 7511(a), which embodies a 90-day
deadline to move to vacate an award following its delivery to the
losing party. (Def.'s Mem. of Law 3-5).[5]

---

[5] The distinction between these two sources of law is that
under the FAA the movant must give notice of, or serve, her
application within three months. In contrast, the New York
statute refers to an application having been "made" within 90
days (not three months), and the term "made" contemplates filing
rather than service. See, e.g., Hakala v. J.P. Morgan Secs.,

Defendant further requests confirmation of the arbitrator's May 26, 2010 award. In doing so, GE emphasizes the narrowness of judicial review of arbitrators' decisions, and provides a documented narrative of the course of proceedings before the arbitrator, including her various scheduling and conference orders and her rulings. Based on this record, GE asserts that the arbitrator was neither biased nor unfair in her handling of the arbitral proceedings, and that she acted well within her powers in first dismissing on substantive grounds most of plaintiff's claims and then disposing of the balance of the claims on the basis that plaintiff had repeatedly failed to comply with scheduling and disclosure orders, had declined to participate in several conferences (including several instances in which she had hung up during telephone conferences) and had ended up by inexcusably absenting herself from the entire pre-hearing process. (Def.'s Mem. of Law 6-18).

Finally, noting plaintiff's extensive and repeated efforts to challenge both the initial decisions of the District Court and the Second Circuit requiring her to pursue arbitration, and her manifestly meritless challenges to the arbitrator's decisions,

---

Inc., 356 F. Supp.2d 355, 356-57 (S.D.N.Y. 2005), aff'd mem., 186 Fed. Appx. 131 (2d Cir. 2006).

defendant seeks to enjoin plaintiff from the initiation of any further litigation against GE without prior court permission. (Def.'s Mem. of Law 19-21).

## ANALYSIS

We first address the defendant's attack on the timeliness of the vacatur application and then consider the legal viability of the remaining non-arbitration claims that we perceive as possibly embedded in plaintiff's pleading. We then turn to GE's request for confirmation of the arbitral award and finally address defendant's request for an injunction.

As we will explain, Ms. Santos's vacatur request is untimely under the FAA, thus barring vacatur and authorizing confirmation of the arbitrator's challenged decisions. We also conclude that her other, implicit civil claims against GE are legally flawed and should be dismissed. As for GE's request for confirmation of the arbitrator's May 26, 2010 award, we find, on the merits, that plaintiff has established no basis to deny that request. Finally, we conclude that defendant has not justified an injunction preventing plaintiff from any future litigation against GE without prior court permission.

9

I. GE's Motion to Dismiss

A. Timeliness

Defendant argues principally that plaintiff's request to vacate the two arbitral decisions is untimely because the FAA requires service of the vacatur application within three months after the award is either filed or delivered.[6] GE notes that the final award, addressing the four surviving claims, was issued on May 26, 2010, and it contends that the decision was e-mailed to both parties that day, pursuant to the longstanding consent of both sides to have service by e-mail. GE then observes that plaintiff did not serve her vacatur application until November 16, 2010, long after the expiration of the three-month deadline.

Alternatively, GE invokes the pertinent CPLR provision, section 7511(a), which provides that "[a]n application to vacate or modify an award may be made by a party within ninety days after i[t]s delivery to him." As noted, the term "made" refers to the filing of the application. See, e.g., Hakala v. J.P. Morgan Secs.,

_____

[6] Section 12 states that "Notice of a motion to vacate, modify, or correct an award must be served on the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.

10

Inc., 356 F. Supp.2d at 356-57; Levy v. Allstate Ins. Co., 63
A.D.2d 982, 983, 406 N.Y.S.2d 109, 110 (2d Dep't 1978); David D.
Siegel, New York Practice § 601 & n.11 (4th ed.), available at
Westlaw SIEGEL-NYPRAC. On this version of its argument, GE again
asserts that the May 26, 2010 award was delivered to plaintiff on
that date, and it goes on to note that neither the filing of the
complaint with the Clerk of the Court nor its prior submission by
plaintiff to the Pro Se Clerk on August 26, 2010 was accomplished
within 90 days after the asserted delivery date.

    In opposition, plaintiff appears to ignore defendant's
argument about the application of the FAA deadline for notice and
asserts principally that she never consented "in writing" to have
the AAA serve her by e-mail. (Pl.'s Opp'n. 3).[7] Based on that
assertion, she implies that, for limitations purposes, she was
entitled to rely on the mailed delivery of any order, and she
asserts that she received a copy of the May 26, 2010 award in the
mail on June 1, 2010, although she admits that AAA provided copies
of all pertinent documents by e-mail as well as by mail. Noting
that she submitted her vacatur application to the Pro Se Clerk on

---

    [7]  The AAA rules that were effective in 2006 allowed e-mail
to be used only with the parties' consent. See Employment
Arbitration Rules and Mediation Procedures, http://www.adr.org
/sp.asp?id=36105#38.

August 26, 2010, she insists that this filing was timely under the CPLR, apparently on the premise that she could ignore the e-mail delivery to her of the award in the absence of her written consent to such service. (Id.).

Insofar as we are addressing a motion to dismiss on limitations or equivalent grounds, we look to proffers by the parties of competent evidence reflecting whether the lawsuit is timely, since the complaint itself does not provide definitive guidance. See generally Nadolecki v. New York State Dep't of Taxation & Finance, 2011 WL 2446491, *3 (E.D.N.Y. May 17, 2011); Roman Catholic Diocese Rockville Ctr. v. Inc. Village of Old Westbury, 2011 WL 666252, *5 (E.D.N.Y. Feb. 14, 2011). The pertinent facts, notably the dates of various events, are not in genuine dispute. As for plaintiff's consent to service by e-mail, putting aside whether it is a material fact, we note that the proffered documentation does not contain a written consent by Ms. Santos to receive arbitral orders by e-mail, although numerous orders from the AAA are marked as having been so sent on the day of issuance of the document (e.g., DXs I, K, P, Q, S, U), including the May 26, 2010 Award that is at issue here. (See DX V at first page). Moreover, plaintiff does not suggest either that she did not receive these communications or that she ever objected to this form

12

of service. As for the January 27, 2009 dismissal order of the
arbitrator, although the record does not specify how it was served
(see DX A at attachments), defendant represents that, like the
other orders and notices from the AAA, it was e-mailed on the date
of issuance, and plaintiff implicitly concedes the point,
observing:

> The plaintiff never consented in writing to accept an
> award via e-mail as required by [AAA] Rule 5(b)(2)(E).
> The AAA's procedural practices cannot suffice for the
> requirement set under the rule. The recognition of a
> process of e-mail still cannot violate the need for a
> person's written consent. The AAA continued using both
> process[es] simultaneously, because there was not written
> consent.

(Pl.'s Opp'n. 3).


In assessing timeliness, we start by noting that plaintiff is
seeking vacatur of two separate decisions, one issued January 27,
2009, which disposed of ten claims asserted by plaintiff, and the
other issued May 26, 2010, which addressed her remaining four
claims. The question thus arises whether the deadline for seeking
vacatur of each of these two orders should be separately
calculated.[8]

---

[8] Defendant does not address this question in its briefing
and seems to assume that the pertinent time for review was
triggered by issuance of the later, May 26, 2010 award. (Def.'s
Mem. of Law 3-6).

As a general matter, interim orders of an arbitrator are not subject to judicial review at the time that they are issued. See, e.g., Michaels v. Mariforum Shipping, 624 F.2d 411, 414 (2d Cir. 1980). Nonetheless, "disposition of an issue that is separate from other issues before the arbitrators can be deemed final and subject to judicial review." Yonir Techs., Inc. v. Duration Sys. (1992) Ltd., 244 F. Supp.2d 195, 204 (S.D.N.Y. 2002)(citing Sperry Int'l Trade Inc. v. Gov't of Israel, 532 F. Supp. 901, 906 (S.D.N.Y. 1982)). As the Second Circuit has noted, an order is final and subject to judicial review, even prior to an arbitral hearing, if the award "finally and definitely disposes of a separate independent claim." Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986)(citing cases).

In this case, in January 2009 the arbitrator conclusively dismissed a host of articulated claims, almost all of which were either legally insufficient and plainly not cognizable or else -- insofar as they involved plaintiff's contention that she should not have been required to submit to arbitration -- had previously been disposed of by the rulings of Judge Droney and the Second Circuit. (DX A at attachment -- Jan. 27, 2009 Order at 7-11). These claims were separate and independent from the claims that the arbitrator retained for adjudication, all of which involved assertions of

14

discriminatory or harassing conduct by GE on the basis of plaintiff's race or asserted disability. Hence, the time for plaintiff to seek vacatur of the January 2009 decision began to run when she received it. See, e.g., Metallgesellschaft A.G., 790 F.2d at 282-83; In re Fluor Daniel Intercont'l, Inc. & Gen. Elec. Co., 2007 WL 766290, *2-3 (S.D.N.Y. Mar. 13, 2007); Yonir Techs., Inc., 244 F. Supp.2d at 204, 206; see also In re Lowe & Erie Ins. Co., 56 A.D.3d 130, 132-33, 865 N.Y.S.2d 465, 466-67 (4th Dep't 2008)(holding that "delivery" under CPLR § 7511(a) refers to date of receipt of arbitral award).

There is no question that plaintiff received the January 2009 order long before she filed her application for vacatur in August 2010 and still longer before she served that pleading on GE in November 2010. Plainly, then, her challenge to that first order would be time-barred under both the FAA and the CPLR.

We now turn to the somewhat murkier question of the timeliness of plaintiff's application to vacate the May 26, 2010 award. This requires us to assess the applicability of the FAA and CPLR time limits to plaintiff's complaint.

In addressing this question we start by noting that plaintiff

invokes the FAA as her jurisdictional basis (Compl. ¶ II.B), an assertion that defendant does not explicitly challenge. Nonetheless, the jurisdictional ground here is not quite so straightforward.[9] The FAA "is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Vaden v. Discover Bank, 556 U.S. 49, 129 S. Ct. 1262, 1271 (2009) (internal alterations and quotation marks omitted); see also 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28. . . ."). In a recent decision, the United States Supreme Court offered concrete guidance as to how to determine the existence of federal subject-matter jurisdiction in a case involving resort to arbitration. In that circumstance, the court may "look through" to the underlying arbitrated claims to determine whether they arise under federal law. Vaden, 129 S. Ct. at 1273. As explained in Vaden, when

---

[9] Irrespective of defendant's silence on the matter and its reliance on the FAA, we are required to assure ourselves of the existence of subject-matter jurisdiction. See, e.g., Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).

"looking through" to determine whether there is federal-question jurisdiction in an action involving the FAA, a court should "assume the absence of the arbitration agreement and determine whether it would have jurisdiction under title 28 without it." Id. (internal quotation omitted). The operative question is whether the parties' substantive conflict gives rise to federal-question jurisdiction. Id.[10] In performing this analysis, a court must look to the well-pleaded allegations of the complaint. Schultz v. Tribune ND, Inc., 754 F. Supp.2d 550, 555 (E.D.N.Y. 2010).

As we have noted, plaintiff's articulated claims that were the subject of the May 26, 2010 award arose under federal law, including the ADA and Title VII. Necessarily, then, we have jurisdiction over her complaint and the motion of GE to confirm the award.[11] Hence the parties' assumption that the FAA governs our proceeding appears to be correct.

---

[10] This mode of analysis deviates from prior Second Circuit precedent, which had held that "[s]imply raising federal-law claims in the underlying arbitration is insufficient to supply [the] independent basis" for federal jurisdiction. Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 26 (2d Cir. 2000); see also Bittner v. RBC Capital Mkts., 331 Fed. App'x 869, 871 (2d Cir. 2009)(noting in dictum that Vaden appeared to overrule Second Circuit precedent).

[11] Of plaintiff's three additional independent claims, two at least arise under federal law (the ADA and ERISA) and the third presumably comes within the court's supplemental jurisdiction. See 28 U.S.C. § 1367.

If that be the case, it would seem to follow that plaintiff was required to comply, at the least, with section 12 of the FAA. See, e.g., Triomphe Partners, Inc. v. Realogy Corp., 2011 WL 3586161, *2-3 (S.D.N.Y. Aug. 15, 2011) (applying section 12 to bar vacatur motion as one day late); Waveform Telemedia, Inc. V. Panorama Weather North America, 2007 WL 678731, *5 (S.D.N.Y. March 2, 2007). Moreover, we note that the terms of the RESOLVE Program, which were incorporated into plaintiff's employment agreement, contain a reference to the choice of law that would govern statute-of-limitations issues, and it indicates that the governing law would depend on the nature of the claim, whether arising under state or federal law. (PX B3; see id. at 23 (referring to "Statute of Limitations"). To the extent that this may reflect the expectation of the contracting parties that federal limitations requirements would govern time limits, that too would seem to justify applying section 12 of the FAA. See, e.g., Harper Ins. Ltd. v. Century Indem. Co., 2011 WL 3366484, *3 & n.7 (S.D.N.Y. July 28, 2011)(parties' contractual choice of New York law justifies application of CPLR § 7511(a)).

If this FAA provision applies -- as we conclude it does -- it is clear that plaintiff's vacatur application must be dismissed irrespective of any question concerning the validity of delivery of

18

the May 26, 2010 Award by e-mail. Plaintiff admits that she received the mailed copy by June 1, 2010. Yet she failed to provide notice of her vacatur motion to GE until at least November 16, 2010, when the complaint was mailed to GE. That time gap exceeds five months, substantially more than the three months permitted by the statute.

In undertaking this analysis we note that plaintiff's pro se status does not excuse her non-compliance with statutory deadlines. See, e.g., Hakala v. J.P. Morgan Secs., Inc., 186 Fed. App'x 131, 134 (2d Cir. 2006); see also White v. Local 46 Metallic Lathers Union, 2003 WL 470337, *4 (S.D.N.Y. Feb. 24, 2003). We also note that the cited FAA provision does not explicitly require service of process, but rather "notice" of the vacatur application. Hence, even if a pro se litigant confronts obstacles to the prompt service of her pleading following its submission to the Pro Se Clerk because she must wait until that Clerk processes her complaint, that would not excuse her non-compliance with the notice requirement.

In any event, plaintiff was free at any time to send GE a copy of her complaint while awaiting processing by the Pro Se Office, but she apparently did not do so. Moreover, even if she needed to

19

wait for the Pro Se Clerk to arrange for filing by the Clerk of the Court, that event occurred on September 21, 2010, and yet she did not provide the service documents to the United States Marshal until November 12, 2010, as a result of which service was not accomplished until November 16, 2010, more than six weeks after she was given the service package. That was long after the FAA deadline for providing notice of the application to defendant had expired, a delay that justifies denial of the application since plaintiff cannot satisfy the requirements for equitable tolling. See, e.g., Triomphe Partners, Inc., 2011 WL 3586161, at *2-3 (finding service one day late and dismissing vacatur application; court rejects equitable tolling argument in the absence of due diligence or special circumstances). See generally Harper v. Ercole, 648 F.3d 132, 136-42 (2d Cir. 2011)(describing and applying equitable-tolling criteria in habeas proceeding).

To the extent that plaintiff implies that only the CPLR provision applies, we view that assumption as misplaced.[12] It is true that the fact that an arbitration dealt with federal-law claims will not, in all contexts, lead to the application of FAA

---

[12] We note that GE does not directly address this issue even though plaintiff's argument depends on the assumption that only the CPLR statute of limitations applies here.

section 12. The quintessential exception involves applications to vacate or confirm labor arbitration awards under section 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). In those cases the courts apply federal common law, including rules governing the statute of limitations, but do not look to the FAA because that statute does not cover arbitrations pursuant to collective bargaining agreements. 9 U.S.C. § 1 (excluding coverage of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"). See, e.g., United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n.9 (1987); New York City Counsel of Carpenters Pension Fund v. S&G Flooring Inc., 2009 WL 1835949, *2 & n.2 (S.D.N.Y. June 23, 2009). In such cases, the Second Circuit has undertaken to "borrow" the provisions of CPLR § 7511(a) to govern the limitations requirement for pursuing vacatur of arbitral awards made in New York. See, e.g., Local 802 Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998); Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l, Union, 912 F.2d 608, 610-13 (2d Cir. 1990); see also Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of America (UPGWA), 47 F.3d 14, 16 (2d Cir. 1995)(applying Connecticut law). That circumstance is not found here, however, since the arbitration did not involve claims of a violation of a collective

21

bargaining agreement.[13]

---

[13] We note that the wording of section 1 of the FAA, in
defining this exception to coverage, could be read to exclude any
arbitration -- including the one at issue here -- that arose from
the terms of an employment contract and that involved claims
against an employer. This provision, however, has not been so
read. The Second Circuit, among other courts, long construed the
section 1 exception as limited to employees whose work directly
involved them in the interstate transportation of goods. See,
e.g., Signal-Stat Corp. v. Local 475, 235 F.2d 298, 302 (2d Cir.
1956); accord, Maryland Cas. Co. v. Realty Advisory Bd. on Labor
Rels., 107 F.3d 979, 982 (2d Cir. 1997); Erving v. Virginia
Squires Basketball Club, 468 F.2d 1064, 1069 (2d Cir. 1972). In
2001 the Circuit Court overruled this line of cases in part,
based on its reading of the Supreme Court's 1957 decisions in
Textile Workers Union v. Lincoln Mills, 353 U.S. 448 (1957), and
Goodall-Sanford, Inc. v. United Textile Workers, Local 1802, 353
U.S. 550 (1957), which indicated that arbitrations under union
collective bargaining agreements, which are governed by 29 U.S.C.
§ 185, were not directly subject to the FAA since section 301 of
the Labor Management Relations Act ("LMRA") "is a source of
federal 'substantive law . . . which the courts must fashion from
the policy of our national labor laws.'" Coca-Cola Bottling Co.
v. Soft Drink & Brewery Workers Union Local 812, 242 F.3d 52, 54-
55 (2d Cir. 2001)(quoting Lincoln Mills, 353 U.S. at 455). Since
Coca-Cola's application before the Circuit invoked section 301 of
the LMRA, the Court of Appeals concluded that the FAA did not
apply, although it could be looked to as a source of guidance.
Id. at 54-55. See also Westerbeke Corp. v. Daihatsu Motor Co.,
304 F.3d 200, 221-22 (2d Cir. 2002). The reasoning and impact of
these decisions is necessarily limited to section 301
arbitrations, that is, proceedings involving a union under a
collective bargaining agreement. See 29 U.S.C. § 185(a)
(referring to "[s]uits for violation of contracts between an
employer and a labor organization"). Indeed, the Second Circuit
has made clear that even cases involving union arbitrations will
be governed by the FAA if the particular arbitration is excluded
from the coverage of the LMRA. See Adams v. Suozzi, 433 F.3d 220,
226 n.5 (2d Cir. 2005)(holding that FAA, rather than LMRA § 301,
applied to union arbitration because the employer was a political
subdivision and hence excluded from the LMRA; in non-section 301
circumstance, the FAA § 1 exclusion is still limited to "workers
involved in the transportation industries.")(quoting Maryland

22

One other set of decisions bears mentioning on this issue. In Hakala v. J.P. Morgan Secs. Inc., 356 F. Supp.2d 355 (S.D.N.Y. 2005), aff'd mem., 186 Fed. App'x 131 (2d Cir. 2006), the District Court addressed a motion to vacate a National Association of Securities Dealers (NASD) arbitration award, and held that it was untimely under CPLR 7511(a). The movant sought belatedly to invoke section 12 of the FAA to save his application, and the District Court rejected the argument, observing:

> Section 12 . . . requires only that a motion to vacate an award b[e] "served upon the adverse party or his attorney within three months after the award is filed or delivered." It does not address filing. In consequence, the Court "borrows" the most nearly analogous state statute of limitations. . . . That is CPLR § 7511(a).

Id. at 358 n.7 (citing Burns Int'l Sec. Servs., 47 F.3d at 16). The Circuit affirmed in an unpublished order in like terms, stating

> As the district judge correctly recognized, by its plain language, § 12 applies only to notice, *i.e.*, service, it does not apply to filing. . . . To that extent, the ninety-day limitations period in C.P.L.R. § 7511 governs the timeliness of Hakala's petition. *See generally Hakala v. Deutsche Bank AG*, 343 F.3d 111 (2d Cir. 2003)(applying C.P.L.R. § 7511(a) to timeliness issue).

---

Cas. Co., 107 F.3d at 982). It follows that arbitrations -- as here -- between an employee and her employer that are not governed by a collective bargaining agreement and by LMRA § 301(a) are subject to the terms of the FAA. See, e.g., Henry v. Turner Constr. Co., 2010 WL 2399423, *1-2 (S.D.N.Y. June 14, 2010).

23

186 Fed. App'x at 133.

These decisions neither state nor imply that section 12 may be ignored by a petitioner seeking to vacate an arbitral award under the FAA. Rather, the question posed in that case was whether -- as a necessary pre-condition to saving Hakala's petition -- the CPLR was inapplicable, and the courts held that it was controlling on the statute of limitations. We infer that the reason for that conclusion was that in federal court the pertinent time for concluding the running of the statute of limitations, at least on federal-law claims, is the filing of the complaint, not its service, e.g., Henderson v. United States, 517 U.S. 654, 657 n.2 (1996); West v. Conrail, 481 U.S. 35, 38-39 (1987); see Fed. R. Civ. P. 3; since CPLR § 7511(a) defines its time limit in terms of filing, whereas FAA § 12 looks only to notice (or service), the CPLR was a better match for defining a statute-of-limitations period. That does not speak to whether an arbitration party may avoid the notice requirement of the FAA in a case governed by that statute -- indeed, the Hakala courts were not required to address that question -- and the answer is plainly that section 12 cannot be ignored if the movant fails to comply with it. Indeed, were it otherwise and the CPLR were deemed entirely to supplant FAA § 12,

24

we would be transgressing the basic canon of statutory interpretation that all provisions of a statute must be given effect. See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001); see also Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1078 (2011).

We conclude, then, that a failure either to file timely under the CPLR or to serve timely under the FAA will be fatal to a motion to vacate, absent some form of equitable tolling. See, e.g., Yonir Techs., Inc., 244 F. Supp.2d at 206-07 (applying both CPLR § 7511(a) and FAA § 12 to timeliness question). Since, as we have observed, plaintiff failed to serve or otherwise give notice to GE within the three-month period specified by the FAA and has shown no basis for equitable tolling, her vacatur application must be denied.

Under these circumstances we need not reach the question of whether plaintiff complied with the filing rule of CPLR § 7511(a), a question that raises a more complex set of issues under New York law. As we have noted, plaintiff argues that her asserted lack of written consent to e-mail delivery by the AAA precludes reliance on the May 26, 2010 e-mailing of the challenged award, and if she is correct in that contention, her filing would have to be deemed timely since she received the mailed copy on June 1, 2010 and filed

her complaint with the <u>Pro Se</u> Clerk on August 26, 2010.[14] To assess

plaintiff's legal premise, however, would require us to delve into

several questions of state law the resolution of which is not at

all clearcut.[15] Moreover, not only is this excursion unnecessary to

---

[14] Since plaintiff is <u>pro se</u>, she must be deemed to have filed, and thus "made", her application on August 26, 2010, when she delivered it to the <u>Pro Se</u> Clerk. See <u>Toliver v. County of Sullivan</u>, 841 F.2d 41, 42 (2d Cir. 1988)(when <u>in forma pauperis</u> status is granted, a complaint is deemed filed when the <u>Pro Se</u> Office receives it).

[15] As we have noted, the parties dispute the factual question of whether plaintiff effectively consented to e-mail service by the AAA. Given this conflict, if we were required to address the question of plaintiff's compliance with the CPLR on the current motion, it would be necessary to determine (1) whether the term "delivery" as used in the CPLR encompasses delivery in a manner that is inconsistent with the rules of the AAA, and (2) whether the movant may have waived that defense to untimeliness if she orally consented or followed a course of conduct throughout the arbitral process that manifested effective consent. In this regard we note that CPLR § 7507 provides that "[t]he arbitrator shall deliver a copy of the award to each party in the manner provided in the agreement, or, if no provision is so made, personally or by registered or certified mail, return receipt requested." This wording would not authorize e-mail delivery unless agreed to by the parties, but it does not directly address whether that agreement must be in writing (as the AAA rules require). Moreover, there is New York caselaw to the effect that non-compliance with this provision in the manner of delivery does not toll the statute of limitations, see <u>Sassower v. Greenspan, Kanarek, Jaffe & Funk</u>, 121 A.D.2d 549, 504 N.Y.S.2d 31, 31-32 (2d Dep't 1986), and other caselaw holding that deviation from the required manner of delivery does not undermine the award absent proof of prejudice, and does not constitute defective delivery if actual delivery occurred. <u>See, e.g.</u>, <u>Local 964 United Bhd. Of Carpenters & Joiners of America v. Giresi</u>, 29 A.D.2d 768, 769, 287 N.Y.S.2d 854, 855 (2d Dep't 1968); <u>Shimon v. Silberman</u>, 26 Misc. 3d 910, 915, 891 N.Y.S.2d 891, 895 (Sup. Ct. Kings Cty. 2009); <u>Kozlowski v. Seville Syndicate, Inc.</u>, 64 Misc. 2d 109, 118, 314 N.Y.S.2d 439, 449

decide the timeliness issue; it is also unnecessary because even if plaintiff's motion were deemed timely, we would have to reject it on the merits, for reasons explained <u>infra</u> at pages 34-54.

B. <u>Dismissal of the Balance of the Complaint</u>

As noted, defendant's dismissal motion targets the entirety of the complaint but assumes that it encompasses only an application to vacate the arbitral award. This is perhaps understandable since the body of the pleading focuses explicitly on that goal. Nonetheless, plaintiff appends to her form complaint a narrative of pertinent alleged events, labeled "Statement of fact", and in the relief section of the form complaint she asks not only for vacatur of the two targeted arbitral rulings, but also for what plaintiff refers to as "statutory damage[s] for causes of action described throughout complaint." (Compl. ¶ V).

Since we are required to read plaintiff's pleading with some liberality, particularly in view of her <u>pro</u> <u>se</u> status, <u>e.g.</u>,

───────────

(Sup. Ct. N.Y. Cty. 1970). It is also unclear whether, under New York law, an arbitral party may be deemed to have waived an objection to delivery that is non-compliant with the statute. In any event, we see no need to address these questions in view of our conclusion that section 12 of the FAA precludes plaintiff's vacatur application.

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)("[S]ubmissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (quotations omitted), we have undertaken to identify potential, if unlabeled, claims lurking in the narrative sections, and, as previously noted, have identified three possibilities. See pp. 6-7, supra. Having done so, we have also determined that, in the interest of judicial economy, it would be appropriate to treat defendant's dismissal motion as sub silentio seeking dismissal of those potential claims as well for failure to state a claim. Cf. Mohammad v. New York State Higher Educ. Servs. Corp., 422 Fed. App'x 61, 62-63 (2d Cir. 2011) (sua sponte dismissal order); Morpurgo v. Inc. Village of Sag Harbor, 417 Fed. App'x 96, 97 (2d Cir. 2011)(same). Since the ostensible claims that we have identified are plainly not cognizable here, we recommend that they be dismissed as well.[16]

a.   Rule 12(b)(6) Standards

"To survive a motion to dismiss, a complaint must contain

---

[16] Since we are undertaking the following analysis sua sponte, we note that plaintiff will have the opportunity to state her views by filing objections in the District Court.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are not required, the plaintiff must present more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Although the court is required to accept as true all well-pled factual allegations, it is not required to accept legal conclusions, including any conclusion "couched as a factual allegation." Id. 1949-50.

As applied by the Second Circuit, the Supreme Court's Iqbal decision prescribes a two-part approach. A court should first identify those parts of the pleadings that are merely conclusory. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Then, the court "should determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." Id. (internal cites and quotes omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

b.   Assessment of the Non-Arbitration Claims

Construed liberally, the complaint alleges (1) that GE's

29

attorney caused Ms. Santos emotional distress during their discussions in the course of preparing for the arbitration hearing (Compl., "Statement of fact", ¶ 13); (2) that GE attempted to deprive plaintiff of her disability insurance payments (id. ¶ 18); and (3) that defendant discriminated against her, in violation of the ADA or Title VII (id. at 19). Although it is possible for a plaintiff to assert independent, non-arbitrable claims that arise from the manner in which the arbitration was handled, e.g., Mian v. Donaldson, Lufkin & Jenrette Secs., 7 F.3d 1085, 1086-87 (2d Cir. 1993), we conclude that plaintiff's purported claims are fatally deficient.

### i. Intentional Infliction of Emotional Distress

Ms. Santos alleges that, during a settlement discussion, Lisa Brauner, Esq., of Littler Mendelson (counsel for GE) was "unprepared to present an offer . . ., but instead was more prepared to offer unsolicited legal opinions and threats." (Compl. "Statement of fact", ¶ 13). Ms. Santos alleges that Ms. Brauner utilized tactics "geared to provoke emotional distress to plaintiff by stating 'It's better to take something or get nothing at all.'"[17]

---

[17]   We assume that Ms. Brauner said or meant to say "It's better to take something than get nothing at all."

(Id.). Ms. Santos further alleges that Ms. Brauner knew that
plaintiff suffered from "several extreme emotional disorders."
(Id.). Given our mandate to give Ms. Santos latitude when
construing her complaint, we discuss this as a claim for
intentional infliction of emotional distress.

The alleged interaction between plaintiff and the attorney
plainly does not meet the high bar set in New York for recovery for
intentional infliction of emotional distress. See Reyes v.
Fairfield Props., 661 F. Supp.2d 249, 270 (E.D.N.Y. 2009) ("The
conduct alleged [in an IIED claim] must be so outrageous in
character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized society.")(citations omitted). Ms.
Brauner's statements, as alleged by plaintiff, do not even approach
outrageous or extreme behavior, and instead fall squarely into the
category of reasonable statements customarily made during
negotiations.

While it is true that knowledge of the particular sensitivity
of a defendant can support a finding of intentional infliction of
emotional distress, see Restatement (Second) of Torts § 46 cmt. f
(1965)("The extreme and outrageous character of the conduct may

31

arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity."), Ms. Brauner's statements, as described by plaintiff, are simply too mundane to give rise to a colorable claim. Accordingly, we recommend that Ms. Santos's apparent claim for intentional infliction of emotional distress be dismissed.

ii. GE's Alleged Attempts to Take Away Ms. Santos's Disability Payments

Ms. Santos refers to a "threat of overturning of the plaintiff's just status of being person [sic] with a disability." (Compl. "Statement of fact", ¶¶ 17-18). Plaintiff goes on to discuss a potential future claim under ERISA. The Supreme Court has identified an injury-in-fact as an "irreducible constitutional minimum of standing." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Since plaintiff currently is on disability, she has suffered no injury from the anyone's alleged attempt, if any, to alter her disability status. Moreover, in any event plaintiff is bound by the 2005 ruling of the Connecticut District Court that this claim is subject to arbitration. (DX B at 3, 6-9)(referring to claim of interference with disability benefit payments and holding that Ms. Santos was bound to arbitrate the claims she was

32

asserting). Accordingly, we recommend that this claim be dismissed.

### iii. <u>Violation of the ADA or Title VII</u>

Plaintiff also "seeks the statutory remedies for the discriminatory conduct she experienced while employed by the defendant." (Compl. "Statement of fact", ¶ 19). We infer that plaintiff is referring to compensatory or other monetary relief under the ADA or Title VII. The Connecticut District Court held that plaintiff was required to submit these claims exclusively to arbitration, and the Second Circuit dismissed plaintiff's appeal from that ruling. (DX B, F). Accordingly, we recommend that any claims by Ms. Santos for violation of the ADA or Title VII, other than those folded into her claims relating to the arbitration process, be dismissed.

### iv. <u>The Nature of the Dismissal</u>

As a general rule, when a complaint is dismissed for failure to state a claim -- and particularly when the pleading is authored by an untutored <u>pro se</u> litigant -- the court should authorize re-pleading if there is reason to believe that the plaintiff may be able to articulate a viable set of allegations. See, <u>e.g.</u>, <u>Porat v.</u>

Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); Gomez
v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999); Branum v.
Clark, 927 F.2d 698, 705 (2d Cir. 1991). Nonetheless, leave to
amend should not be authorized if a liberal reading of the pleading
reflects that the plaintiff has not "inadequately or inartfully
pleaded" potentially viable claims, but rather that her claims,
however pled, are fatally flawed. E.g., Cuoco v. Moritsugu, 222
F.3d 99, 112 (2d Cir. 2000); Thomas & Agnes Carvel Found. v.
Carvel, 736 F. Supp.2d 730, 766 (S.D.N.Y. 2010). That is the case
here, and accordingly dismissal with prejudice should be ordered.


        II. GE's Motion to Confirm


        Apart from seeking dismissal of plaintiff's complaint, GE
applies for an order confirming the May 26, 2010 award of the
arbitrator. That motion should be granted.


        Under federal law, if the losing party in an arbitration
cannot obtain a vacatur of the award because her application was
untimely, she cannot challenge confirmation of that award on the
grounds that she might have asserted in support of a vacatur order,
that is, she cannot assert unenforceability. See, e.g., Parker
Meridien, 145 F.3d at 88-89; S&G Flooring, 2009 WL 1835949 at *2-3;

                                  34

see also Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984).[18] For reasons already noted, plaintiff's application to vacate is barred by untimely notice to GE, and hence she cannot prevail on the asserted basis that the award is unenforceable. In any event, even if we disregard the apparent untimeliness of plaintiff's motion to vacate, she has not demonstrated a basis for relief, and hence it is appropriate to order confirmation.

In assessing this matter, we note at the outset that courts "should . . . treat a petitioner's application to confirm or vacate an arbitral award as 'akin to a motion for summary judgment.'" City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 136 (2d Cir. 2011) (quoting D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006)). We therefore refer to the evidentiary record on the current motions, which demonstrates that GE's motion to confirm is fully justified.

It has long been recognized that judicial review of arbitral awards is quite limited. As the Second Circuit has observed, "A

---

[18] The New York courts appear to take a somewhat different position, holding that the losing arbitral party may wait for the other side to move to confirm and then oppose on the same bases as would justify vacatur. See, e.g., State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co., 121 A.D.2d 529, 504 N.Y.S.2d 24, 25 (2d Dep't 1986).

35

party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair, 462 F.3d at 110. As for the grounds on which an award may be challenged, section 10(a) of the FAA specifies the cognizable bases for vacatur,[19] to which the Second Circuit has added a gloss:

> The FAA and federal case law supply various bases for review of an arbitral award. Section 10 itself lists several grounds, including fraud in procuring the award; corruption, partiality, or prejudicial misconduct on the part of the arbitrators; abuse of power; and failure to render "a mutual, final, and definite award." Judicial interpretation has added additional grounds, such that awards may be vacated under limited circumstances where the arbitrators manifestly disregarded the law, or where enforcement would violate a "well defined and dominant public policy."

Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 26-27 (2d Cir.

---

[19] Section 10(a) authorizes vacatur in the following circumstances:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which rights of any party have been prejudiced.

(4) Where the arbitrators have exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

2000) (citations omitted).[20]

After discarding the conclusory allegations of Ms. Santos's complaint and motion papers, we are left with virtually nothing that even vaguely suggests any ground requiring a vacatur or modification of the arbitration award. Before addressing her assertions, we summarize the course of the arbitration as reflected in the record before us.

In June 2007 plaintiff signed a form seeking intervention by the AAA, which, in accordance with the RESOLVE Program, initially involved mediation. (DX G, H). Following the failure of the mediation (DX I), in November 2007 plaintiff and GE submitted to AAA arbitration, again in compliance with the RESOLVE Program, to which plaintiff had bound herself when agreeing to employment by the company in 2002. (DX G at 3rd page). In the box for the grievant to specify her claims, plaintiff listed "ADA

---

[20] The status of the manifest-disregard reference by the Second Circuit was called into some question by the Supreme Court when it held that the grounds for vacatur listed in section 10(a) are exclusive. See Hall Street Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 583-89 (2008). In the wake of that decision, however, the Second Circuit has adhered to the view that its manifest-disregard language was simply an interpretation of statutory language and thus was not undercut by Hall. See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 93-95 (2d Cir. 2008), vac. on other gds., 130 S. Ct. 1758 (2010).

Discrimination; Race Discrimination; failure to pay OT wages (5/02-8/02)[;] violation of constitutional, statutory and contractual rights; Fraud and corruption; Intentional infliction of Emotional distress; Creating a hostile work environment; Harassment; Retaliation; Breach of Fiduciary duties; unfair employment practices." (Id. at 2nd page). Although this summary was, to say the least, cryptic, in her prior lawsuit in federal court plaintiff had explained her claims more explicitly. She asserted that she had been involved in an accident in 2002 and had suffered unspecified injuries, which had limited her ability to perform all of her work responsibilities. She alleged that her supervisors had refused any remedial accommodations and actively discriminated against her on the basis of race in terms of lunch breaks. She further asserted that her condition had deteriorated (as a result of rheumatoid arthritis) and that the company still refused any accommodation, targeted her for criticism about her job performance, made it difficult for her to obtain leave for medical visits and threatened her with termination. She also reported that she had eventually gone on disability leave in November 2003. She complained as well that in April 2004 GE had begun to raise questions about her continued certification as disabled and had at some point suspended her benefits. (DX B at 2-3).

38

It bears mention that on November 16, 2007, at the same time
as plaintiff joined with GE in requesting arbitration, she filed
her motion in the Connecticut District Court to reopen her 2004
case, vacate Judge Droney's 2005 decision mandating compliance
with the RESOLVE Program, and stop the arbitration. (DX J). She
based this motion in part on her complaint that the AAA had
followed the RESOLVE Program requirement that mediation precede
arbitration and her assertion that both the AAA and GE were either
biased against her or otherwise corrupt. (Id. at 2-3).

On December 21, 2007 the AAA notified the parties that it was
appointing Jacquelin F. Drucker as the arbitrator; at the same
time it provided them her disclosures of professional and other
affiliations and gave the parties the opportunity to object to her
selection. (DX K). Neither party initially objected, and the AAA
therefore confirmed Ms. Drucker's appointment. (DX K at 6th page).

On January 23, 2008 the arbitrator held her first arbitration
management telephone conference with the parties. She then issued
an order summarizing what had occurred at the conference. She
noted that she had directed (1) that by January 30, 2008 Ms.
Santos provide a written statement expanding on her fairly
skeletal initial description of her claims (an obligation that the

39

arbitrator later agreed to extend to February 1, 2008), (2) authorized GE to file a dispositive motion, by February 27, 2008, directed to Ms. Santos's claims, (3) scheduled Ms. Santos's response for March 26, 2008 and GE's reply, if any, for April 2, 2008, and (4) scheduled a follow-up conference for April. (Id. at 8th-9th pages).

By letter dated February 21, 2008 Ms. Santos requested that the arbitration process be suspended, apparently because of the pendency of her motion before Judge Droney to relieve her of the obligation to arbitrate her disputes with GE. (DX L at 2nd-3rd pages). The arbitrator denied that request by order dated February 22, 2008. In doing so, she noted that Judge Droney had long before ruled that plaintiff was bound by her agreement to pursue ADR processing of her claims under the RESOLVE Program and that the Second Circuit had upheld that ruling. Accordingly, in the absence of a judicial stay, she declined to stop the arbitral process at that point. (Id. at 3rd page).

By letter dated February 26, 2008, which was addressed to the President of the AAA, Ms. Santos sought the removal of Ms. Drucker as the appointed arbitrator and of Ms. Linda Hendrickson as the

40

case manager. The AAA declined her request. (DX N).[21]


On January 27, 2009, the arbitrator issued an order adjudicating GE's motion to dismiss all of Ms. Santos's claims. She granted the motion in part and denied it in part. (DX A at attachment -- Order dated Jan. 27, 2009). In doing so, she noted that the parties had fully briefed the motion and that she had conducted oral argument as well on that application. (Id. at 2). Based on her review, she dismissed ten of the claims and preserved four others. In doing so, she offered a detailed summary of plaintiff's factual contentions as well as her efforts before the EEOC and the federal courts. (Id. at 3-5). As for the merits, the arbitrator rejected GE's global time-bar argument, finding that plaintiff's deadline to sue was tolled by her pursuit of various remedies in the EEOC and federal court, although she did conclude that Ms. Santos's claim for failure to pay overtime in mid-2002 was time-barred. (Id. at 5-7). She also undertook a specific claim-by-claim legal analysis and ended by dismissing plaintiffs' claims for "Waiver of Rights", "Fraud and Misrepresentation", "Breach of Contract", "Violation of Constitutional Due Process",

---

[21] At that time Ms. Santos also had a pending motion before the Connecticut District Court seeking the recusal of Judge Droney. (DX M). As noted, the judge ultimately denied that request as well. (See DX O).

"Intentional Infliction of Emotional Distress", "Interference with Contractual Rights", "Breach of Fiduciary Duties", "Unfair and Deceptive Employment Practices" and "Corporate Corruption". The surviving claims were for discrimination on the basis of race and disability, hostile work environment, and retaliation. (Id. at 7-11).

In the wake of this decision, the arbitrator conducted an apparently brief telephone conference with the parties on March 3, 2009, at which time Ms. Santos advised that she was seeking legal counsel and asked for a temporary halt to the proceeding, which the arbitrator granted. (See DX Q at 5th page). Ms. Santos later advised that she would continue to proceed pro se. (Id.).

The arbitrator conducted a follow-up case management conference on April 18, 2009 and then issued an order encapsulating the events of that conference, including a schedule for pre-hearing discovery. (DX Q at 2nd-3rd pages). The arbitrator scheduled the hearing for August 3 and 6, 2009. In preparation, she required Ms. Santos to supply GE with a list of proposed witnesses by May 6, ordered GE to identify who among that list were ex-employees and to provide their contact information by May 11, specified that document requests and plaintiff's medical

42

releases were to be served by May 18, allowed plaintiff to serve written questions by that date for the GE witnesses to answer, and scheduled document production for June 8. (Id.). The arbitrator also scheduled plaintiff's pre-hearing deposition for June 29, or alternatively July 13, and specified a follow-up conference for May 22, 2009. (Id. at 3rd page).

In May 2009, a new attorney, Lisa Brauner, Esq., appeared in the arbitration proceeding as co-counsel for GE. At the same time, the arbitrator issued a supplemental disclosure form, dated May 25, 2009, noting a few isolated contacts with Ms. Brauner's law firm but not with her. Accompanying this document was a letter from AAA authorizing the parties to advise the Association if they had an objection to the arbitrator in light of this new development. (DX P). Ms. Santos subsequently objected to the proceeding as a whole, albeit without specification of her objections. (Id. at 6th page). As a result, on July 10, 2009 the AAA asked her to provide specific grounds for her objections by July 17, 2009. (Id.). Ultimately, on July 29, 2009, the AAA declined to remove Ms. Drucker as arbitrator for lack of any demonstrated conflict. (DX R).

The arbitration hearing did not occur as originally scheduled

43

because of the appearance in the case of Ms. Brauner, which had necessitated the new disclosures by the arbitrator. (DX Q at 5th page). Instead, the arbitrator held another pre-hearing telephone conference on August 31, 2009. (Id.). At some point during the conference, Ms. Santos disconnected herself from the conference, leading to its premature termination. (See DX V -- May 26, 2010 Award at 3). Nonetheless, based on the order later issued by the arbitrator pertaining to this conference, it appears that most if not all of what needed to be accomplished at this session was achieved. At the outset of the conference Ms. Santos advised that she was recording the proceeding, which she was permitted to do, contingent on her providing a copy of the disk to GE by September 8, 2009. (DX Q at 5th page).[22] The parties then reported that much of the information that each side had requested pursuant to the prior schedule had not yet been supplied; more specifically, because plaintiff was dissatisfied with the contact information provided to her by GE, she had refused to respond to the company's information requests or to provide the required medical releases. (Id. at 5th-6th pages). Ms. Santos also sought to justify her stonewalling of GE based on a purported limitation on the number

---

[22] Plaintiff had also recorded the prior conference but had not yet supplied a copy of the disk to the company, as previously required. (DX Q at 5th page).

44

of information requests that she had been permitted to serve; the
arbitrator, however, noted that no such limitation had been
imposed on her. (Id. at 6th page). Rather than rule on these
disputes at that conference, the arbitrator ordered the parties to
supply her with copies of their written information requests and
responses by September 3, and to participate in another telephone
conference on September 4. (Id.).


At the outset of the September 4 conference, the arbitrator
noted that she had received the parties' previously served
information requests but observed that it appeared that Ms. Santos
had not served any request other than for witness-contact
information. She then noted to Ms. Santos, in apparent deference
to her pro se status, that she was entitled to demand documents
from GE. (DX S at 2nd page). Rather than respond, it appears that
Ms. Santos began to articulate a litany of complaints that were
outside the scope of the conference and the arbitrator's
authority, some of which involved issues that Ms. Santos had
previously and unsuccessfully raised with the AAA. The arbitrator
at that point asked the participants to remain silent so that she
could explain the steps that she was ordering to complete
discovery and proceed with the arbitral hearing. Ms. Santos,
however, declined to stop her litany of complaints, thus

45

preventing the arbitrator from explaining the next steps that she was ordering. (Id.). Having expressed her unhappiness at length, Ms. Santos then proceeded to disconnect herself from the conference call, necessitating the termination of the conference. (Id.).

In view of this denouement, the arbitrator directed that the next conference be conducted in person and on the record. (Id.). Because of the difficulty being encountered in accomplishing full discovery, she also ruled that the initial arbitral hearing would be limited to issues of liability, with a damages proceeding to follow if necessary. (DX V -- May 26, 2010 Award at 3-4). She also upheld an objection by Ms. Santos to the use by GE of interrogatories. (Id. at 4).

At the in-person conference on November 23, 2009, the parties exchanged some documents and addressed some other discovery and document-handling issues. Among these, Ms. Santos finally signed medical release forms. Moreover, Ms. Santos agreed in the future to remain on the line during telephone conferences. (Id. at 4; DX T). In addition, the arbitrator warned the parties that they must cooperate and comply with deadlines, and that failure to do so could lead to sanctions, including -- insofar as Ms. Santos was

concerned -- the possible dismissal of her case. (DX V -- May 26, 2010 Award at 4).

Shortly after the conference, Ms. Santos wrote to the arbitrator, reporting that counsel for GE had erred in preparing the medical release forms by listing Ms. Brauner as counsel for her rather than for GE. Apparently because of this error, Ms. Santos reported that she had instructed her medical providers not to comply with the releases. (Id.). The arbitrator therefore ordered GE to recall the releases, advise the medical providers of the error, prepare new releases and send them to Ms. Santos, who was directed to sign them by a date certain. (Id.). Ms. Santos, however, failed to execute the corrected releases by the specified date. (Id.).

The arbitrator held a further telephone conference on January 7, 2010. (Id. at 4). At that conference Ms. Santos proposed that she would send the medical releases directly to her health-care providers. While the arbitrator was discussing a deadline for that to occur, Ms. Santos again disconnected herself from the conference. As a result, the arbitrator issued an order directing Ms. Santos to provide releases by a specified date. (DX V -- May 26, 2010 Award at 4; see DX U at 1). Ms. Santos failed to meet

47

that deadline, and shortly thereafter advised the arbitrator in vague terms that she had had some personal issues, apparently medical in nature, that had precluded her compliance with the deadline for execution of the releases. (Id. at 1-2; DX V -- May 26, 2010 Award at 4).

In view of the difficulty in obtaining compliance by Ms. Santos with ordered deadlines and the further difficulty in ensuring her uninterrupted participation in scheduling conferences, as well as her continuing failure to provide any further disclosures or any additional explanation of why she was in such complete default, the arbitrator issued a lengthy scheduling order on February 23, 2010. (DX U). It specified dates (1) for plaintiff to provide medical releases (March 16, 2010), (2) for plaintiff herself to provide her medical records to GE if she directed her providers to send the records to her rather than to GE (April 30), (3) for Ms. Santos to notify the arbitrator and GE as to which method she was using to produce the medical records (March 5), (4) for Ms. Santos to be deposed (May 28), (5) for GE, over its objection, to provide last-known addresses for certain former employees (March 16), (6) for Ms. Santos to provide a list of written questions to be posed to certain GE employees (March 16), (7) for objections by GE to such questions, responses by Ms.

Santos and an arbitral ruling on the objections (March 23, April 1 and April 8, respectively), (8) for GE to supply answers to the written questions (April 30), (9) for Ms. Santos and GE to supply each other and the arbitrator with witness lists and exhibits (June 11 and June 22, respectively), (10) for objections to these lists and responses to the objections (July 1 and July 8, respectively), and (11) for the arbitral hearing (July 26-27). (Id. at 2-4).

GE complied with the arbitrator's order to supply last-known contact information for former employees. Ms. Santos, however, did not comply with the requirements imposed regarding her medical releases and production of her records, as specified by the arbitrator, and apparently ceased communicating with the arbitrator and with GE. (DX V -- May 26, 2010 Award at 5; DX U at 9th page). As a result, on March 19, 2010 GE applied for an order of dismissal. In view of Ms. Santos's continued non-communicative posture as of March 29, 2010, the arbitrator issued still another order on March 30, in which she noted this default and ordered Ms. Santos by April 7, 2010 (1) to provide a written explanation for her failure to comply with the February 23 order, (2) to provide documentation of the reasons for her default, and (3) to supply dates by which she was prepared to comply with her disclosure

49

obligations. She further reiterated her earlier warning that continued non-compliance could lead to dismissal of Ms. Santos's case. (DX V -- May 26, 2010 Award at 5; DX U at 9th-10th pages). She also directed that this order be sent to Ms. Santos not only by e-mail, as had been the practice throughout the arbitration proceeding, but also by regular and certified mail addressed to her home. (Id. at ninth page; May 26, 2010 Award at 5).

Plaintiff did not respond by April 7, as directed, or at any time thereafter. (DX V -- May 26, 2010 Award at 5 ). On April 8 GE renewed its dismissal request, and the arbitrator issued an order the same day directing Ms. Santos to respond to that application by April 16. She further warned that failure to do so would lead to dismissal of Ms. Santos's claims. (Id.). This order was sent to Ms. Santos by e-mail, regular mail and Federal Express two-day delivery. (Id.). None of these forms of communication generated any indication that they had not been received, and yet Ms. Santos failed to respond. (Id. at 5-6). In view of Ms. Santos's repeated, extended and now complete default, on May 26 the arbitrator issued an award dismissing plaintiff's claims. (Id. at 6).

In seeking to challenge this result, plaintiff offers general and conclusory criticisms of the arbitration process. In her

50

complaint she alleges, without elaboration, that an AAA case manager (Ms. Hendrickson) -- who Ms. Santos seems to believe should not have been involved in the process -- "doctored" an order of the arbitrator by striking out dates. (Compl. "Statement of fact", ¶ 20). It is not clear what document she is referring to, what dates were struck and whether Ms. Santos was in some way prejudiced by this alleged behavior. Ms. Santos also complains -- somewhat ironically -- about procedural delays (id. ¶¶ 3, 5), and asserts in unenlightening terms that the AAA provided misleading information to her. (Id. ¶ 10). These pleading allegations, which are not further explained in plaintiff's opposition to GE's motion to confirm, do not suggest any cognizable ground for vacatur of the award.

    Plaintiff also makes a general allegation that the arbitrator failed to take into account relevant medical information and failed to accommodate plaintiff's disability. (Id. ¶ 21). Generously construed, this seems to be an allegation that the arbitrator was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown". 9 U.S.C. § 10(a)(3). Plaintiff fails to offer any specifics, however, that might conceivably reflect misconduct by the arbitrator in this or any other respect. Indeed, she offers no evidence to contradict the

51

specific historical findings of the arbitrator as to the course of proceedings before her, and those findings reflect a complete failure by plaintiff to comply with numerous scheduling orders, culminating in her complete withdrawal from any participation in the arbitral proceeding. Moreover, despite plaintiff's conclusory and entirely unsupported assertions of "bias, corruption, conspiracy and a lack of integrity" by the AAA (Compl. "Statement of fact", ¶ 23), the record reflects that the arbitrator was entirely even-handed, ruled in plaintiff's favor on a number of pre-hearing issues, gave her ample opportunity as a <u>pro</u> <u>se</u> litigant to correct her omissions in seeking discovery, and offered her a nearly unending series of chances to cure her longstanding failure to meet her own discovery obligations -- and all of this despite the fact that plaintiff repeatedly showed her contempt for the rules under which the arbitration was proceeding and for the authority of the arbitrator to establish and enforce a schedule for completing the proceeding.

The inadequacy of plaintiff's showing is underscored by the absence of any meaningful evidence, as opposed to conclusory assertions in her papers in opposition to GE's motion for confirmation. To the extent that she makes broad assertions of misconduct by the arbitrator, we note that there is no evidence of

such impropriety. Moreover, she cannot avoid confirmation based even on proven misconduct unless she can establish that she was thereby denied "fundamental fairness" in the arbitration proceeding. See, e.g., Cong. Secs., Inc. v. Fiserv Correspondent Servs., Inc., 102 Fed. App'x 190, 191-92 (2d Cir. 2004); Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997); Euromarket Designs, Inc. v. McGovern & Co., 2009 WL 2868725, *4-7 (S.D.N.Y. Sept. 3, 2009). Plainly, Ms. Santos has not remotely made any showing either of misconduct or of a denial of fundamental fairness.

Finally, for much the same reasons, there can be no question that, given the history of plaintiff's failings and the prejudice that they were causing GE, the arbitrator acted well within her discretion in finally dismissing the proceeding. E.g., Mahon v. Texaco, Inc., 122 Fed. App'x 537, 539 (2d Cir. 2005). Under these circumstances, there is no basis for challenging her ruling. Cf. Euromarket Designs, 2009 WL 2868725 at *1-2 (arbitration hearing conducted at which neither respondent McGovern nor his counsel appeared; court enforces award despite McGovern's claim that he did not know of scheduled hearing).

Absent grounds for vacatur or modification, the court is

53

required to confirm an award if the appropriate motion is made within one year of the award. See Ottley v. Schwartzberg, 819 F.2d 373, 375-76 (2d Cir. 1987) ("Section 9 of the Federal Arbitration Act . . . provides that the district court must grant a petition to confirm an arbitration award if it properly is brought within one year of the date of the award, unless one of the statutory bases for vacating or modifying the award is established. . . Moreover, the showing required to avoid summary confirmation is high.") (internal citations omitted); see also N.Y. CPLR § 7510 ("The court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511."). GE's application to confirm the award here must be granted.

5.  GE's Motion to Enjoin Plaintiff from Filing Further Actions in Federal Court

Finally, GE requests an injunction enjoining Ms. Santos from "filing any further actions in the federal system regarding GE without judicial approval." (See Def.'s Mem. of Law 19). GE presses two points in support of its request. The first is that Ms. Santos, by filing numerous claims against GE, has proven to be a vexatious litigant who is abusing the judicial process. (Id.). The second is that Ms. Santos's behavior during the AAA

54

proceedings was wholly inappropriate, as she violated deadlines, refused to provide necessary information, and was guilty of generally rude behavior. (Id. at 19-20).

The Second Circuit has long recognized the authority of the federal courts to control the behavior of litigants who have "a history of filing '"vexatious, harassing or duplicative lawsuits"'' through "restrictions on future access to the judicial system." Hong Mai v. Doe, 406 F.3d 155, 158 (2d Cir. 2005) (quoting Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005); Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986)); accord In re Martin-Trigona, 9 F.3d 226, 228-29 (2d Cir. 1993). Thus, the court retains the equitable power to place appropriate restrictions on the ability of a litigant to pursue repetitive and abusive lawsuits in the future. See, e.g., In re Martin-Trigona, 737 F.2d 1254, 1261-64 (2d Cir. 1984); accord, e.g., Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27, 30 (2d Cir. 2003); Colida v. Nokia Inc., 2008 WL 4517188, *13-16 (S.D.N.Y. May 6, 2008). In assessing the propriety of such injunctive relief, we are to look to (1) the plaintiff's history of litigation and particularly whether it reflects a pattern of "vexatious, harassing or duplicative lawsuits"; (2) the plaintiff's motives in pursuing the litigation, including

55

particularly whether she has a reasonable and good-faith basis for expecting to prevail; (3) whether she is represented or pro se; (4) whether the plaintiff's conduct has caused "needless expense" to other litigants or imposed an "unnecessary burden on the courts"; and (5) whether other remedies would suffice to serve the goals of an injunction. Safir, 792 F.2d at 24; accord, Bridgewater Operating Corp., 346 F.3d at 30.

Assessing GE's arguments on this point, we do not believe that the conduct of Ms. Santos in the course of the arbitration proceeding itself could justify injunctive relief. GE cites no authority that indicates that a plaintiff's behavior in that context, considered separately from the plaintiff's abuse of the judicial process, supports such an injunction. Her conduct in the arbitration proceeding does, of course, set some bounds on her claimed good faith in pursuing the current lawsuit, a factor that -- as noted -- is at least relevant to the court's exercise of its equitable powers. Ultimately, however, though we recognize that in at least one instance plaintiff has engaged in what may be viewed as bad-faith and frivolous litigation, we do not believe that an injunction of the type sought by GE is necessary.

We start by noting that cases in which injunctions of this

type have been entered have generally involved plaintiffs with a
history of filing numerous facially or factually frivolous
lawsuits, often in the face of warnings about the baselessness of
their actions. See, e.g., Malley v. New York City Bd. of Educ.,
112 F.3d 69 (2d Cir. 1997) (plaintiff had previously twice been
warned that he should file no further duplicative suits, first
after his third complaint and then after his fourth complaint);
see also, e.g., In re Sassower, 510 U.S. 4, 5 (1993); Bridgewater
Operating Corp., 346 F.3d at 30; Thomas & Agnes Carvel Found., 736
F. Supp.2d at 770-72; In re Martin-Trigona, 592 F. Supp. 1566,
1569-76 (D. Conn. 1984), aff'd, 763 F.2d 140 (2d Cir. 1985) (per
curiam). That is not really the case here.


     GE's injunctive request rests solely on alleged misconduct by
Ms. Santos in pursuing her claims about the company's alleged
mistreatment of her during the brief time that she worked there.
Among her efforts, plaintiff's initial resort to the EEOC was
permissible, see, e.g., EEOC v. Waffle House, Inc., 534 U.S. 279,
283, 285-97 (2002) (EEOC may pursue damages and injunctive relief
for employee bound by arbitration agreement); EEOC v. Frank's
Nursery & Crafts, Inc., 177 F.3d 448, 455-56, 459-62 (6th Cir.
1999), and it led to only a brief proceeding before the agency. As
for her lawsuit in the Connecticut District Court, although she was

resisting GE's position that she was bound to follow the RESOLVE
Program, that one effort by her to avoid ADR was not so manifestly
frivolous as to suggest, in itself, bad faith or to compel the
conclusion that any further efforts by her in court against GE
should be at least conditionally enjoined. For much the same
reason, the fact that she sought to appeal the Connecticut District
Court's ruling to the Second Circuit does not itself add much to
the mix of facts that are pertinent to defendant's application;
that appeal was clearly her right, and although it led to a
dismissal order rather than an affirmance, that form of disposition
was triggered by her in forma pauperis application. We also cannot
consider Ms. Santos's follow-up efforts to seek mediation and then
arbitration before the AAA to be in any way inappropriate; she was
ordered by the District Court to pursue her claims under the
RESOLVE Program, and she did so. As for the current proceeding, New
York and federal law permit an aggrieved party to an arbitration to
proceed to court to seek vacatur or modification of an adverse
arbitration award.

The only step that plaintiff took in a litigative context that
smacks of bad faith was her return to the Connecticut District
Court in 2007 to seek, in effect, to revisit the 2005 ruling that
had led to her participation in mediation and arbitration. That

58

ruling was of course law of the case, and had been effectively
upheld by the Second Circuit. Hence there was no basis at all, even
for a pro se litigant, to renew this controversy, much less for
plaintiff's motion to compel recusal of the judge. That said, it
might well have been appropriate for GE to seek sanctions in that
instance for the two motions that plaintiff belatedly filed there.
It apparently chose not to do so, but such a step -- that is, the
concrete threat of sanctions in the event of frivolous litigation
-- may well be sufficient to contain litigants such as Ms. Santos,
insofar as she may threaten occasionally to overstep the line.

It is also true that Ms. Santos engaged in repeated
inappropriate behavior during a long stretch of her arbitration
proceedings, but, importantly, she has already felt the negative
effects of such behavior by having her claims dismissed without a
ruling on their merits. Moreover, we have recommended that that
decision be confirmed here, and plaintiff's application for vacatur
be denied. Given these steps, we believe that the threat of case-
by-case sanctions available if she pursues frivolous litigation in
the future should be sufficient at this stage to deter future
misconduct.[23]

---

[23] We of course do not intend to imply that plaintiff is not
entitled to seek review of this Report and Recommendation in the

CONCLUSION

For the reasons set forth above, we recommend that GE's motion to dismiss the complaint be granted, that its motion to confirm the May 26, 2010 arbitration award also be granted, and that GE's motion for an injunction precluding plaintiff from filing future lawsuits against it without prior court permission be denied.

Furthermore, we recommend that the court, pursuant to 28 U.S.C. § 1915(a)(3), certify that any appeal from its order would not be taken in good faith, and that therefore in forma pauperis status should be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to the Report and Recommendation portion of this submission. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room

District Court.

60

1340, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).


Dated: New York, New York
       September 28, 2011




_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Recommendation & Report have been mailed today to:

Ms. Sylvia Santos
4415 Furman Avenue
Bronx, New York 10466

Catherine A. Rogers, Esq.
Gregory B. Reilly, Esq.
Littler Mendelson
900 Third Avenue
New York, New York 10022-3298